BAKER *v.* WOOD.

5-368                           267 S. W. 2d 765

Opinion delivered April 19, 1954.

[Rehearing denied May 31, 1954.]

*Reece Caudle* and *Richard Mobley,* for appellant.

*Shaw & Spencer,* for appellee.

GRIFFIN SMITH, Chief Justice. Two issues are present: (1) Did the probate court err in refusing to remove Olen R. Wood as executor of the estate of Irvin V. Tenison? (2) Was the court's determination that Wood did not use improper influence to induce execution of the will against the weight of evidence?

Separate appeals were taken. By administrative order the first was withheld from submission until the second could be considered with it, although the two were not consolidated.

Tenison died November 6, 1952, in his 69th year. His will was executed June 13, 1951. Shortly thereafter a codicil corrected the spelling of certain names that had been erroneously typed. The codicil also mentioned that the testator had instructed his friend, Olen R. Wood, to place his body in a double-strength steel casket and vault, "and lay me to rest by the side of my beloved wife in Memorial Park Cemetery". Mrs. Tenison had died in 1949.

The will, as distinguished from the codicil, contained a similar expression. In addition it asked that the First Christian and First Presbyterian Churches of Mena permit joint funeral services at the Christian Church, the last rites to be supervised by Dallas [Masonic] Lodge No. 128. This sentence appears: "I request that Olen R. Wood acquire from Beasley-Wood Funeral Home a vault for the remains of my body, similar to the one in which the remains of my deceased wife were laid to rest".

The testator bequeathed to each of the churches heretofore identified $500. Two hundred dollars went to the Mena Park Commission, $500 to the Masonic Lodge, $600 to one sister, $700 to another, $1,500 to a third, and to a niece of Mrs. Tenison $2,500 and a half interest in a lot in Mena. Each of two nephews was given one dollar. As stated by the appellants, Olen R. Wood is to receive as a tenant in common half of real

estate valued at $2,500 and $700 in cash. Wood was also to receive a diamond ring. He was to serve as executor without bond. During one of the trials it was stipulated that validity of personal bequests to the executor would be the only challenged items, reserving, of course, the contention that Wood's personal interests were antagonistic to his trust status.

A procedural controversy arose during the second trial (appeal number 368) when on direct examination Wood was asked what arrangements, if any, Tenison had made for his own funeral. Counsel for appellants insisted that our decisions construing § 2 of the schedule to the constitution were infringed when Wood, over appellants' objection and exceptions, was permitted to testify that Tenison, in purchasing a burial policy for $300 from the Beasley-Wood Funeral Home, asked whether he could have the same kind of a funeral that Beasley-Wood had provided for Mrs. Tenison. The complete question was: "What arrangements, if any, did Mr. Tenison make with reference to his own funeral?"

There was no dispute that the burial policy had been purchased. During the first and second trials testimony almost identical in many respects was given. On cross-examination by appellants Wood was asked regarding transactions with Tenison. Stress was placed upon testimony of other witnesses who said they had heard Tenison say he had paid Wood $1,200 to cover funeral expenses. We are asked to consider the two appeals in parity. To do this it is impossible to exclude parts of the testimony that appellants themselves developed and to say that as to it the Dead Man's Statute, so-called, is applicable.

It is not disputed that after Mrs. Tenison's death Wood and the surviving husband became close friends. Witnesses testified they had heard Tenison say that Mr. and Mrs. Wood were the best friends he had. He frequently expressed appreciation of their acts of kindness. At odd times Tenison would stay at the funeral home or sit for hours talking with acquaintances. He

had undoubtedly selected the kind of casket he wished to be buried in and had shown it to several persons. But the evidence that he had prepaid his funeral is partly hearsay and partly dependent upon statements that Wood admitted such an arrangement had been made. The trial court was not impressed with this testimony, and we do not think its rejection was arbitrary or that when all of the evidence is considered it can be said to preponderate in favor of the claim of prepayment.

In 1951 Tenison placed $500 with Wood in anticipation of expenses that might accrue during an illness. It was shown that with the exception of $33.26 the money had been appropriately spent for Tenison's benefit. Wood testified that he undertook to return the difference and that Tenison told him to keep it for his trouble. This explanation is not inconsistent with the relationship that was shown to have existed at that time.

G. W. Liles, a minister of the United Pentecostal Church at Mena, testified that Tenison had been a roomer and boarder in his home after Mrs. Tenison's death, and that Tenison had offered to leave some if not all of his estate to him on condition that certain ecclesiastical services would be performed. The minister says he refused the offer because Tenison smoked—a violation of the church rules. Tenison had also told him that he would remember the minister's son in his will to an extent sufficient to aid with the young man's education.

Liles said that on one occasion he looked through a window of Tenison's room and saw him counting money. There were several large envelopes. Liles did not know what the unopened envelopes contained, but assumed that they were used by Tenison in connection with his supposed habit of hoarding money. The envelopes were taken from a box ordinarily kept in Tenison's trunk. This box, according to Liles, was taken to the Beasley-Wood Undertaking Parlors for safe-keeping.

Liles also testified that Mr. and Mrs. Wood had visited Tenison in his room, that on one occasion he over-

heard conversations regarding a will, and that seemingly Wood objected to certain bequests Tenison had in mind, believing them to be too liberal. He thought Tenison was drinking on this occasion, and knew that after Mrs. Tenison's death his boarder occasionally took a "bracer"—usually early in the morning. A bottle of brandy was found by Wood in Tenison's trunk while a search was being made for burial clothes, and there were indications that other containers had been utilized by Tenison. Wood offered to give the liquor to a third party.

Liles and other witnesses called by the plaintiffs thought that Tenison, although ordinarily strong-willed, could be easily influenced through friendship and whiskey. They admitted, however, that he was not mentally impaired and that he usually had definite views not easily changed. Witnesses called by the defendant regarded Tenison as a man of high character, calm reasoning, definite purposes, and mentally alert.

We agree with the probate judge that the evidence was not sufficient to justify removal of Wood as executor or to establish undue influence in the procurement of bequests. Neither do we think prepayment of the funeral costs was shown by convincing testimony. In naming Wood executor Tenison selected Lowrey Embry as executor in succession to serve in the event of Wood's death. The court felt that the designation of Embry as co-executor would be advantageous. There is no appeal from this action.

Evidence sufficiently shows that Tenison's will was his voluntary act. Wood was not present when it was written or executed. The drafting attorney followed the testator's instructions in all essentials and it is difficult to see how the trial court could have reached a different conclusion. Wood's good character was avouched by a number of witnesses who had known him for years as an upright, honorable business man.

We are not able to say that the trial court incorrectly appraised the testimony, hence the judgments must be affirmed.